LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* BARTLETT MASON.

1. DAMAGES. *Railroads.* *Evidence.* In an action against a railroad company, as a common carrier, for damages to horses in transit, the measure of damages would be the value of the horses killed and the depreciation in the value of those injured, at the place of delivery, but direct testimony by the opinion of witnesses of that value or depreciation is not indispensable; it is sufficient if there is proof of these facts in the market of a neighboring State connected with the place by railroad, and a full description of the animals and their qualities, and of the character of the injuries.

SAME. *Same.* *Same.* *Charge of court.* Under such circumstances, it is not error to charge the jury that they may fix the amount of the plaintiff's damages, if they find for him, from the age and qualities of the stock, and the nature of the injuries as shown by the proof, although no witness has given an opinion as to the value of the stock or the amount of damages at the place of delivery.

FROM GIBSON.

Appeal in error from the Law Court at Humboldt. J. T. CARTHEL, J.

McFARLAND & BOBBITT for railroad.

WARE & MARTIN for Mason.

COOPER, J., delivered the opinion of the court.

Action by Mason against the railroad company for damages in the killing of one horse and injuring two other horses by the negligence of the servants of the defendant as a common carrier, in transporting the horses from Louisville, Kentucky, to Milan, Tennessee. The jury found a verdict in favor of the plaintiff for $175, and the defendant appealed in error.

The plaintiff gave his own deposition and took the deposition of one Ramsey in support of the action. These depositions were taken in Grant county, Kentucky, and are somewhat loose and meagre. On the trial, the plaintiff rested upon his own deposition, and Ramsey's deposition was read by the defendant. No other testimony was introduced. The plaintiff in error now insists that the evidence shows that the plaintiff below and Ramsey were joint owners of the horses for whose loss and injury the suit was brought, and that the verdict is otherwise unsupported by the proof. The testimony shows that two car loads of horses were shipped by the defendant's road at Louisville, Kentucky, to Milan, on the same train, the plaintiff being in charge of one of these cars, and Ramsey of the other. Each car seems to have contained twenty horses. In the loose and inartificial way in whith the depositions are taken, both witnesses use language from which it might be inferred that they were joint owners of the stock. The counsel of the plaintiff seems at first to have put that construction upon the language, for he

obtained leave of the court to amend and actually amended by making Ramsey a co-plaintiff. This was afterwards corrected by dismissing Ramsey from the case. The point now made was no doubt submitted to the jury upon a charge which has not been excepted to, and they have found that Mason was sole owner of the horses in controversy. The finding is warranted by the testimony. For the plaintiff, in his deposition, treats the horses as belonging to him, and the cross-examination of the railroad company takes the fact for granted in both depositions. The equivocal words are due to the fact that the shipments of each witness were made at the same time, and included the same number of horses.

Both of the witnesses concur in testifying that the horses were injured in the transportation from Louisville to Milan. The plaintiff below deposes that one of them was so badly injured that he refused to receive it from the company. He added, and the statement was read without objection, that he understood the horse was dead. In the absence of any evidence to the contrary, this was sufficient to warrant the jury in finding damages for the loss of one horse and for the injury to the others.

The only point of real difficulty in the case is raised by the charge of the court on the measure of damages. The plaintiff testified that the horse which was killed was a red roan, blaze-faced, one glass eye, about $15\frac{1}{2}$ hands high, with no disease of any kind, sound as a dollar, going all the gaits well,

Railroad *v.* Mason.

and worth $175, adding that the animal "would have brought that amount in the market." He is then asked: "What was the market value of the horse at Milan or in the market?" His answer is: "I could have sold the horse when I shipped for $175." He further testifies that the other horses were damaged $50. The witness Ramsey says that the horse killed was between four and five years old, and a good saddle horse. He is asked if he knew the value of the horse in the markets, and replies in the affirmative. He is also asked: "What was the market value of the horse left at Milan, and what was the amount of damage to the other horses?" His answer is: "I say $125. and they were damaged about $150." Both of the witnesses say, in answer to a question directed to the point, that when they speak of the market value, they mean the market in Mississippi.

Upon this testimony if his Honor, the trial judge, directed the jury, as he probably did, the record not showing the entire charge, that they must find the value of the lost horse, and the damages of the other horses, at Milan at the time when they should have been delivered by the company to the plaintiff, the verdict would have been sustained by the evidence. For the plaintiff's answer above, " I could have sold the horse when I shipped for $175," might well be considered as giving the market value at Milan, to which his attention was directed by the question.

His Honor, however, upon the supposition that

the jury might find that there was no evidence of the value of stock at 'Milan, added the following charge, which is excepted to: "If you find from the testimony that the stock of plaintiff in controversy was shipped to Milan Tennessee, and that the plaintiff is entitled to recover damages for injuries done by the defendant to his stock, then the jury may assess the damages from the testimony as to the age and qualities of the horse that is claimed to have died, and from the testimony as to the nature of the injury to the other stock of plaintiff, if any of his other stock were injured, although no witness gave his opinion as to the value of the horse at Milan that died, if either died, or gave his opinion as to the amount of damages done to the other stock at Milan, if plaintiff's other stock were injured by defendant. For the jury may fix the amount of plaintiff's damages, if they find for him, from the age and qualities of the stock, and the nature of the injuries as shown by the proof, although no witness has given an opinion as to the value of the stock or the amount of the damage at Milan."

The charge must be taken in connection with the fact that there was proof of the value of the horses in the market of the State of Mississippi. The true measure of damages was the value of the horses at the time and place where the defendant, as a common carrier, was bound to deliver the animals to the plaintiff. The horses were shipped at Louisville, but it does not appear positively to what point they were to be carried. It is fairly inferable that they were

to be transported to Milan for the Mississippi market. The most satisfactory evidence of their value at Milan would have been direct testimony to that effect. But such testimony was clearly not indispensable. It has been held by this court that in a suit for the recovery of damages for the breach of a contract made in this State for the delivery of a mining corporation in this State, the value of the stock might be ascertained by its market value in the large cities of the eastern seaboard, where such stocks had a marketable value: *Henegar* v. *Isabella Copper Company*, 1 Cold., 241. So of the State bonds of an adjacent sister State: *Doak* v. *Snaff*, 1 Cold., 180. The value in both cases to be subject to a deduction for the expense of converting them into money by sending them to the best market. The principle of these cases was extended to the case of a conversion of cotton in Hardeman county, in this State, where the only proof of the value of the cotton was evidence of its value at Louisville, Kentucky. The competency, as well as the sufficiency, of the evidence was objected to. The court held, Nicholson, C. J., delivering the opinion, that the evidence was not only competent, but sufficient to sustain the verdict. The means of communication, said his Honor, between the different parts of the country are so easy and rapid, that the market price of a commodity of trade at a commercial center may properly be looked to in ascertaining values, subject to a deduction for the expense of converting the commodity into money: *Fort* v. *Saunders*, 5 Heis.,

487.    And this is the general rule when the value can only be ascertained by proving the market price at the nearest point where the goods or chattles of the quantity in question can be bought and sold: 2 Suth. on Dam., 373.

The case before us falls within the principles settled by the decisions just cited.    The evidence of the value of the horses in the Mississippi market was clearly competent, and, in the absence of any countervailing testimony, was sufficient to sustain the verdict: *Muller* v. *Eno*, 14 N. Y., 597.    It is not a case of the total absence of any testimony of the value of the horses and of the damages sustained, but of positive testimony of such value and damages in a market for such animals in direct communication with, and in a few hours' travel of, Milan.    The jury were properly left to exercise their own judgment and apply their own knowledge and experience to the subject.    They are not required to accept, as a matter of law, the conclusions of the witnesses instead of their own.    "While they cannot," to use the language of Mr. Justice Field in a recent opinion, "act in any case upon particular facts material to its disposition resting in their private knowledge, but should be governed by the evidence adduced, they may, and to act intelligently, they must, judge of the weight and force of that evidence by their own general knowledge of the subject of inquiry": *Head* v. *Hargrave*, 105 U. S., 45.    The rule was applied in that case to the ascertainment of the value of professional services, where, if ever, the testimony of

experts would be conclusive. In the ascertainment of the value of realty taken for public purposes, the Supreme Judicial Court of Massachusetts sustained a charge to the jury, "That, in estimating the amount of damages, if any of them knew of his own knowledge any material fact which bore upon the issue, he ought to disclose it, and be sworn and communicate it to his fellows in open court in the presence of the parties; but that, in making up their verdict, they might rightfully be influenced by their general knowledge on such subjects, as well as by the testimony and opinions of witnesses": *Patterson* v. *Boston,* 20 Pick., 159. In another case, in which the witness had testified as to the quality, condition and cost of certain goods, and given his opinion as to their worth, the same eminent court said: "That the jury were not bound by the opinion of the witness; they might have taken the facts testified by him as to the cost, quality and condition of the goods, and come to a different opinion as to their value": *Murdock* v. *Sumner,* 22 Pick., 156. The Supreme Court of Kentucky seems to have gone a step farther, and held that the jury may fix the price of property sued for from the description given by the witnesses, although the witnesses are themselves silent as to the price: *Craig* v. *Derrett,* 1 J. J. Mar., 366. And the Supreme Court of North Carolina seems to have held the same doctrine as to the province of the jury in estimating the value of services: *Madden* v. *Porterfield,* 8 Jones, 166.

In the case before us the witnesses give such a

detailed description of the physical characteristics, qualities, and other conditions of the horse killed by the defendant, that perhaps the jury might from their general knowledge have approximated its value. They could certainly do so with more accuracy than they usually do in ascertaining damages in actions of tort. But, in addition, they had before them direct testimony of value in a neighboring market, if not at their own door, and might safely be trusted, from the data and their own general knowledge of the subject, "to fix the amount of the plaintiff's damage," as they have done. In this view, and construing the language of the judge in connection with the facts, the charge was correct.

The judgment must, therefore, be affirmed.